## The Overseers of the Poor, of the City of Boston, *versus* David Sears *et ux.*

Before and after the year 1772, twelve persons were chosen annually by the inhabitants of the town of Boston, to be overseers of the poor. In that year a statute was passed, enacting that the overseers of Boston, for the time being, be incorporated into a body politic, by the name &c., and that they and their successors in said office have a perpetual succession by that name; that real or personal property given to the poor of the town be vested in the overseers and their successors in their corporate capacity, for the use of the poor; that they may have a common seal, make by-laws, and choose a treasurer, clerk, and other subordinate officers ; and that all instruments executed under their common seal, and all acts done by consent of a major part of the overseers, shall bind the corporation. *Held,* that this was a corporation aggregate, that it could have no predecessor, and therefore, that in a writ of right, it could count only on its own seisin within thirty years.

In 1822 the town of Boston was changed to a city, by an act providing that the inhabitants shall continue to be one body politic, in fact and in name, and shall have all the rights and be subject to all the duties, incumbent upon and appertaining to the town as a municipal corporation. The same act provides for the election of overseers of the poor, who shall constitute the board of overseers for said city, and shall have all the powers and be subject to all the duties now by law appertaining to the overseers of the poor for the town of Boston. It was *held,* that this was a continuance of the corporation created in 1772, and not a dissolution or suspension of it.

Writ of right, commenced on the 13th of September, 1836. The tenants, in right of the wife, are summoned to answer to the Overseers of the Poor of the Town of Boston, in the Province of Massachusetts Bay, in New England, a corporation duly established by law, in this Commonwealth, whereof Joseph Lewis (and eleven others named,) all duly elected and qualified according to law as overseers of the poor of the city of Boston for the year 1836, are the sole and only members, in a plea of land, wherein the demandants demand a certain parcel of land (described) in Boston, which they claim as their right and succession ; whereupon they say, that within *forty* years now last past, the Overseers of the Poor of the Town of Boston in the Province of Massachusetts Bay, in New England, a corporation then existing and duly established by law in said Commonwealth, whereof Edward Proctor (and eleven others named,) all duly elected and qualified according to law as overseers of the poor for the town of Boston in the year 1796, were the sole and only members, and whose suc-

cessors the demandants are, were seised of the parcel of land aforesaid in their demesne as of fee and right, taking the profits &c., and afterwards the said overseers of the poor for the town of Boston for the year 1796, ceased to hold the office of and be overseers of the poor for said town of Boston ; after which the said Joseph Lewis (and eleven others before named) were duly elected and qualified according to law as overseers of the poor for the city of Boston for the year 1836, and thereupon became by law a corporation as aforesaid, and the lawful successors therein of said Overseers of the Poor for the Town of Boston for the year 1796, and of which land the demandants complain that the tenants unjustly deforce them.

The tenants demurred.

At March term, 1838, the board of overseers chosen for that year filed a motion, that they might be allowed to come in and prosecute the action, as successors of the board chosen for the year 1836. (St. 1826, c. 70 ; Revised Stat. c. 93, § 14, 23.)

*J. Mason* and *C. P. Curtis*, in support of the demurrer. An aggregate corporation must count on their own seisin within thirty years. They have neither predecessors nor successors. *St.* 1786, c. 13, § 3 ; 1 Kyd on Corp. 18, 19, 20, 32, 34 ; 1 Bl. Comm. 469 ; *Leffingwell* v. *Elliot,* 8 Pick. 455 ; Co. Lit. 94 *b ;* 1 Wooddeson, 471, 472 ; Bac. Abr. *Limitation &c., B ; St.* 32 *Hen.* 8, c. 2 ; Com. Dig. *Temps, G* 11 ; Angell on Limitations, 33, and Append. 58 ; Archb. Dig. on Pleading, 26 ; *Waldo* v. *Adams,* 3 Dane's Abr. 399, 400 ; *St.* 1828, c. 137, § 1 ; Revised Stat. c. 119, § 4. The demandants are such, and not a sole corporation, which consists of an individual. *Prov. St.* 12 *Geo.* 3, c. 3, (incorporating the overseers of the poor of the town of Boston ;) 2 Kent's Comm. (3d edit.) 277, 273 ; 1 Bl. Comm. 469, 478 ; Angell & Ames on Corp. 18, 20 ; *Case of Sutton's Hospital,* 10 Coke, 29 *b,* 31 *b ; Widdowson* v. *Harrington,* 1 Jac. & Walker, 525, 526. The charter gives to the overseers, expressly, many of the incidents of an aggregate corporation ; as to hold personal estate, to make by-laws, and to have a common seal

*J. Pickering* and *Bartlett, contrà.* The question is, whether this is a corporation of such a character, that it may count on the seisin of a predecessor. This depends on the language of the statute creating the corporation, taken in connexion with the principles of the common law. By the *Prov. Stat.* 12 *Geo.* 3, *c.* 3, the overseers for the time being, are incorporated into a body politic, by the name &c. and they and their successors in that office, are to have a perpetual succession by that name. The corporation thus created is more analogous to a sole, than to an aggregate corporation. The two kinds run into each other, and the demandants are to be regarded as a sole corporation, or a quasi sole corporation, with some of the incidents of an aggregate corporation. It is a necessary and inseparable incident of an aggregate corporation, that it have the power of perpetuating itself by choice of members. Here the corporators have no such power, but they are chosen by the inhabitants of Boston ; and they have a civil death annually, as a sole corporator dies a natural death. Overseers of the poor are stated in Kyd to be *quasi* corpora tions and to sue and be sued as successors. By *St.* 1821, *c* 110, changing the town of Boston to a city, the overseers of the poor are directed to be chosen in wards, (§ 19,) and this body is made the successor of the old corporation, the members whereof were elected at a general meeting of the inhabitants of the town. — They cited Bac. Abr. *Corporation, A ;* 1 Bl. Comm. 468, 469, 475, 478 ; Co. Lit. 8 *b*, 9 *b*, 67 *a*, 94 *b ; Case of Sutton's Hospital*, 10 Coke, 29 *b*, 31 *b* ; 1 Kyd on Corp. 69, 19, 74 ; 2 Kyd on Corp. 3, 4 ; Angell & Ames on Corp. 16, 58 ; *Grant* v. *Fancher*, 5 Cowen, 309 ; *Todd* v. *Birdsall*, 1 Cowen, 260, and note ; *Vankirk* v. *Clark*, 16 Serg. & Rawle, 286. — A sole corporation may take and hold personal property in trust, and transmit it to a successor. Kyd on Corp. 76, 77 ; *Jansen* v. *Ostrander*, 1 Cowen, 670.

SHAW C. J. delivered the opinion of the Court. It is a well settled rule of law, applicable to real actions, that it is not necessary, as in personal actions, to plead a statute of limitations, and therefore if it appear, on the face of the record, that the action is not brought within the time limited by law,

the tenant may avail himself of it by general demurrer. *Holmes* v. *Holmes*, 2 Pick. 23.

By statute 1786, *c.* 13, § 3, no person or body politic shall sue or maintain any action, for any lands, upon his or their own seisin or possession therein, above thirty years next before the *teste* of the same writ. And by statute 1807, *c.* 75, § 1, no person shall sue or maintain any writ of right to any lands, upon the seisin of his or their ancestor or predecessor, beyond the term of forty years next before the *teste* of the same writ.

It is therefore manifest, that if this writ is taken to be one, on which the plaintiff corporation count on their own seisin ; or, if they constitute a corporation of such a character, that they could have no predecessor, in legal contemplation, and of course could not count on the seisin of predecessors, then this action cannot be maintained. This distinctly presents the question for consideration. On the part of the tenants, it is contended, that this is a common case of a corporation aggregate, consisting of many persons, with the usual incidents of an aggregate corporation, that as such they must declare upon their own seisin within thirty years. On the contrary it is contended by the demandants, that although the plaintiff corporation is composed of many persons, yet that it is more analogous to the case of a sole corporation, particularly in this, that they do not elect the members of their own body, that they all go out at once, and new members come in at once, as the necessary consequence of an annual election by others, and therefore that the corporation of one year, and that of another, when an election has intervened, bear to each other the legal relation of predecessor and successor.

It becomes therefore necessary to distinguish with some care, between these different kinds of corporations. "The first division of corporations," says Blackstone, "is into *aggregate* and *sole*. Corporations aggregate consist of many persons united together into one society, and are kept up by a perpetual succession of members, so as to continue forever. Corporations sole consist of one person only, and his successors, in some particular station, who are incorporated by law in order to give them some legal capacities, particularly that of perpetuity." We are not aware, that there is any instance of

a sole corporation, in this Commonwealth, except that of a person, who may be seised of parsonage lands, to hold to him and his successors, in the same office, in right of his parish. There are some instances in which certain public officers are empowered by statute to maintain actions, as successors, such as judges of probate, county and town treasurers ; but it is only where expressly provided by statute. " There are," says Chancellor *Kent*, 2 Commentaries, (3d edit.) 273, 274, "very few points of corporation law, applicable to a corporation sole." " The corporations generally in use with us, are aggregate, or the union of two or more individuals in one body politic, with a capacity of succession and perpetuity."

It becomes then necessary to consider, what are the distinctions established by law, between a sole and an aggregate corporation. The first and the most important is, that a corporation aggregate has a perpetual existence without change, so that an estate once vested in it, continues vested without interruption. Whereas, when a bishop or parson, holding estate as a sole corporation, dies, or resigns his office, the fee is in abeyance, until a successor is appointed. From this flows one necessary, but obvious legal consequence, which is, that a grant to an aggregate corporation, carries a fee, without the word " successors " ; but a grant to a corporation sole, without including successors, carries a life estate only to the actual incumbent, who is the first taker. Co. Lit. 8 *b*, 9 *b*, 94 *b* ; 4 Cruise's Dig. 442. A life estate to an ideal being having a perpetual and uninterrupted existence, must be coextensive with a fee or perpetuity, and words of limitation could not extend it. But where property vests in a bishop, parson, or other sole corporation, he holds it to his own use and benefit, whilst he holds the office, and afterwards the estate and the enjoyment of it, go together to his successor, when established. The transmission of the estate is perpetual, but the beneficial enjoyment changes at each succession.

Another well settled distinction is, that by the common law a sole corporation cannot take personal property in succession, and that its corporate capacity is confined to real estate. 2 Kent's Comm. 273. An aggregate corporation may take personal property for themselves and successors. The reason

why a sole corporation cannot, says Blackstone, is, that such movable property is liable to be lost or embezzled, and would raise a multitude of disputes, between the successor and executor. 1 Comm. 477.

There are a great variety of other particulars, in which the ncidents and characteristics, which are considered essential to an aggregate corporation, do not extend to a sole corporation, because by the reason and nature of their respective modes of operation, they do not apply ; upon the principle, that when the reason of a rule ceases, the rule ceases.

An aggregate corporation may have and use a common seal, by which the will of the body is expressed, and its acts executed ; they are to take and grant by their appropriate corporate name ; may take and hold real and personal property ; may make by-laws for the regulation of all matters within the scope of their authority, not contrary to the law of the land, or repugnant to the provisions of the charter or act of incorporation ; they must perform all corporate acts, by deed under their common seal, by vote, or by the agency of officers or agents duly authorized for the purpose ; they must appear by attorney and cannot appear in person ; the will of the majority, orderly taken, at a meeting duly called and held, is the will of the body and must govern, unless otherwise provided by charter or by-law ; they must regularly keep a record, journal or other written account of their votes and proceedings, which is the proper evidence of their acts, and may elect and qualify a clerk or secretary for that purpose ; they may elect a president or head, a treasurer, managers, directors, and other suitable officers, with such powers, as the terms import, and such as may be specially conferred upon them, by vote, or deed, to manage their affairs ; they may elect members to fill vacancies, when it is not otherwise provided by the charter. Indeed this last qualification must be added, in regard to almost all these enumerated powers, and it may be remarked generally, that when these are denominated incidents to an aggregate corporation, it is to be understood that they are the most common and usual characteristics of such a corporation, and that they exist by implication, in cases where it is not otherwise provided in the cnarter ; but that its constitution and organization, the mode in

which individuals may become and cease to be members, and also its action in all respects, the manner, times, places and occasions, on which meetings may be held, the members or particular individuals who must be present and vote to constitute a valid act, the officers who may or must be chosen, the property they may hold, the powers they may exercise, the duration of their existence, may all be modified and regulated *ad libitum*, by the power which constitutes the corporation. Nothing seems essential to a corporation but a capacity to have perpetual succession, under a special denomination and in an artificial form, a capacity to take, hold, and grant property, to sue and be sued by its corporate name, and in common to exercise powers, and enjoy franchises and immunities. 2 Kent's Comm. 277.

In all these respects, the distinction between an aggregate and sole corporation, growing out of their different modes of constitution and forms of action, is striking and obvious. A bishop or parson acting in a corporate capacity and holding property to him and his successor in right of his office, has no need of a corporate name, he requires no peculiar seal, he performs all legal acts under his own seal, in his own name and name of office ; his own will alone regulates his acts and he has no occasion for a secretary, for he need not keep a record of his acts ; no need of a treasurer, for he has no personal property except the rents and proceeds of the corporate estate, and these he takes to his own use when received. By-laws are unnecessary, for he regulates his own action, by his own will and judgment, like any other individual acting in his own right. But it is not necessary to pursue the comparison into all its details ; the points suggested are sufficient to show the legal distinctions between the two classes of corporations.

With these views of the characters of these two kinds of corporations, it becomes necessary to examine the act under which the demandants were made a corporation, and under which they act, in order to ascertain their legal character and rights. This act was passed by the provincial government, shortly before the Revolution, in 1772. It recites that many charitably disposed persons, had given sums of money and other interest and estate, to the poor of Boston, and others were

well inclined to make such charitable donations, but the overseers of the poor, of the same town, not being incorporated, such good intentions had been frustrated, or not carried into full effect ; it then enacts, that the said overseers for the time being, be made and incorporated into a body politic, by the name &c., and that they, and their successors in said office, have a perpetual succession by said name. The second section provides, that all money and estate, real or personal, before given, or which should be afterwards given to the poor of said town, not exceeding the amount and value therein limited, should be vested in the same overseers, and their successors, in their said corporate capacity ; and they were enabled to receive and manage the same for the use of said poor. The third section authorizes them to take and hold moneys, securities and personal property to the amount of sixty thousand pounds and no more. The fourth section again declares, that the said overseers and their successors in said office, by the said name, shall have perpetual succession and power, by their said corporate name, to purchase and hold lands not exceeding five hundred pounds, annual income, to manage, lease and sell the same, and do all other acts, as natural persons may, as they shall judge best for the use and advantage of said poor. The fifth section authorizes them to have a common seal, to make by-laws, to choose a treasurer, clerk, and other subordinate officers, and at pleasure to displace them. The sixth and last section declares, that all instruments executed under their common seal, and all acts done or matters passed upon, by consent of a major part of said overseers for the time being, shall bind said corporation and be valid in law.

Here are all the characteristics and incidents of a complete, full, aggregate corporation. It was to be composed of several persons. They were to hold personal as well as real estate, to make by-laws for their government, to have a common seal, to have perpetual succession, and to act by the vote of a majority. Indeed it is not denied, that they are literally an aggregate corporation, consisting of many persons, in contradistinction to a sole corporation ; but it is contended, that as they have no power of electing their own members, and thereby perpetuating their own existence, but all come in by annual election and go

out at the end of the year, they constitute a body more anal-ogous to a sole corporation than to an aggregate one. But this analogy is not such as wholly to change the character of such a corporation. Indeed, the analogy even in this respect is rather slight.

The strong argument is, that in this corporation, there is no provision that the body shall perpetuate itself, by an election of new members, in place of those who die or resign. But this mode of perpetuating its existence, is not essential ; all that is essential is, that some mode be provided by the charter, or act by which it is constituted, by means of which it shall be so perpetuated. Blackstone, in the definition already cited, says, that " corporations aggregate consist of many persons, united together into one society, and are kept up by a perpet-ual succession of members, so as to continue for ever." 1 Comm. 469. If such a succession is effectually provided for, it is all that is requisite. Here we are to consider, that the legislature, in framing this act of incorporation, had in their view, the general laws of the government, and the manner in which towns in general, and the town of Boston in particular, were organized. Those laws provided, that that town should annually choose twelve persons to be overseers of the poor, and the general laws provided, that if overseers were not specially chosen, the selectmen should act as overseers. Towns were of themselves corporations, having perpetual succession, con sisting of all persons inhabiting within certain territorial limits, so that by the ordinary operation of the laws, a perpetual suc-cession of overseers was secured. The better opinion is, that town officers thus annually chosen, hold their offices until oth-ers are chosen and qualified in their place. But this is not es-sential to the argument ; it is made the duty of towns to choose officers annually, it being for their interest to do so ; and when chosen, they become, by force of the statute, members of the corporation, and thus all the purposes contemplated by the in-corporation would be attained. And this mode of continuing a succession of members, without election by the corporation itself, applies to the great majority of corporations in this Commonwealth. In all *quasi* corporations, as cities, towns, parishes, school districts, membership is constituted by living

within certain limits. In all bridge, railroad and turnpike companies, in all banks, insurance companies, manufacturing companies, and generally in corporations having a capital stock, and looking to profit, membership is constituted by a transfer of shares, according to the by-laws, without any election on the part of the corporation itself. In some, the assent of the corporation is made necessary to such transfer and consequent membership. In some instances more nearly resembling the present, all the members of the corporation are chosen, annually or otherwise, by a body other than itself, as trustees of ministerial funds, chosen by the parish, deacons of congregational churches and wardens and vestry of episcopal churches, by the members of those churches ; and in the latter case, the corporators are elected by persons not themselves being a corporation, and having a perpetual existence as voluntary associations, only by the ancient and established usages of the country. *St.* 1785, *c.* 51.

In the present case, abundant provision was made for perpetuating the corporation. Supposing the act to be framed with reference to the established and perpetual laws then in force, it was equivalent to declaring that those persons, who were then overseers of the poor, and those who should thereafter be annually and successively chosen by the town, for ever, as such overseers, should be a body corporate and have perpetual succession. And this was an ample provision made in the act, for the perpetual succession of members, declared by the act itself. It was stated in the argument for the demandants, on the authority of Lord *Coke*, that by the ancient law, an abbot or convent would not take as an aggregate corporation, because, though consisting of many, it had not power to perpetuate itself by election, but the abbot comes in by appointment. But this argument is not sustained by the authority. The reason assigned by Lord *Coke* is, that the abbot only is capable of taking, the convent or monks are dead persons in law, and for that reason, the estate vests in the abbot alone, as a sole corporation. Co. Lit. 94 *a,* 94 *b.*

Some cases were cited from the New York reports, supposed to have a bearing on this subject, in which it was held that overseers might sue and be sued, upon the acts of their

predecessors. *Todd* v. *Birdsall,* 1 Cowen, 260 ; *Grant* v. *Fancher,* 5 Cowen, 369. These cases have very little bearing upon the present question. They depend upon general statute provisions, very different from ours. These cases went on the ground, that the overseers were not corporations, but exercised certain public trusts and duties, which, when done within the scope of their authority, devolved upon their successors in the same trust, in the nature of corporate obligations. Whatever may be the relations of the overseers of the poor in this Commonwealth, by the general laws, in this respect, these demandants were specially incorporated for the purpose of taking and holding property, for the use of the poor, and their rights and duties, in this respect, do not depend upon these general laws.

If the legislature who granted this act of incorporation, knew and recognized the distinction between an aggregate and sole corporation, it is very clear, that they intended to constitute an aggregate corporation, to take and hold personal property, and provided for the appointment of a treasurer for that purpose.

An argument for the plaintiffs was drawn from the use of the word " successors," in the Provincial act by which they were incorporated. This term is used in the act as *descriptio personarum,* as a designation of the persons who are at all times to compose the one corporation. The term is, their successors in said office ; it is equivalent to saying that the overseers then in office, and those who should afterwards from time to time be overseers, should constitute the corporation. Besides, the argument would prove too much ; the usual and common form of words, in which aggregate corporations are created is, that certain persons, either named, or described, with their " successors and assigns," constitute the corporation ; yet it is a *continuing* corporation, would take an estate in fee without the word *successor,* and must count on its own seisin.

One other point in the case of the demandants, it seems proper to consider. It was urged, that although it might be held that each annual election should not operate as a succession, yet that the change from a town to a city government, in 1822, must be deemed to have that effect, and that the overseers of

the city, are legally and technically the successors of the over-seers of the town. To estimate the weight of this argument, it is necessary to examine the act by which the city govern-ment was constituted. *St.* 1821, *c.* 110. In regard to the municipal body itself, to which the board of overseers was in-cident, the act seems sedulously to guard against the construc-tion, that by its operation one corporation was discontinued and another established as its successor. The language of the first section is, " the inhabitants &c. shall continue to be one body politic, in fact and in name, under the style &c., and shall have all the rights and be subject to all the duties, incumbent upon and appertaining to said town as a municipal corporation. Section 19th provides for the election of overseers of the poor, who shall " constitute the board of overseers for said city, and shall have all the powers, and be subject to all the duties, now by law appertaining to the overseers of the poor for the town of Boston, until the same shall be altered or qual-ified by the legislature."

The act of incorporation was originally granted for the use and benefit of the town, in the administration of certain charitable funds for the use of the poor, the town was *continued* a muni-cipal corporation, with a change of form and organization only, overseers of the poor were to continue to be chosen, and were declared, when chosen, to have all the same powers, as those before chosen by the town, one of which was, to be members of an aggregate corporation. It was then a continuance of the corporation, not a dissolution or suspension of it. If it were held otherwise, if the effect of establishing the city govern-ment was to suspend or dissolve the corporation created by the Provincial act, there is nothing in the act establishing the city government, and no separate act to revive or restore it, and therefore it must be held to be dissolved. But the Court are of opinion, that the effect of the provisions cited, was to prolong and continue the former corporation as if no change of the form of municipal government had taken place. In this respect it was like the very common case of a corporation limited in its duration, by the act of incorporation, and after-wards continued and made perpetual by another act. The

legal effect is the same as if it had originally been made per-
petual.

If it be asked what reason can be assigned, why a sole cor-
poration shall have forty years to bring a writ of right, counting
on the seisin of a predecessor, and why an aggregate corpora-
tion generally, or such a corporation as the demandants, in par-
ticular, shall have only thirty years ; in addition to the techni
cal reasons already assigned, we think there are some others
bearing more directly on the merits.

A parson, acting in the capacity of a sole corporation, comes
to the estate of his predecessor, as an heir does to his inherit-
ance, a stranger.    He is usually a young clergyman, knowing
nothing of the parsonage, till about the time of his settlement.
He is dependent on the duty and courtesy of the representa-
tive of his predecessor, to be furnished with the title deeds.
Considerable time may elapse before he can become acquaint-
ed with the amount and condition of the estate, which he is
bound to preserve and defend for the benefit of himself, his
parish, and his successors.    The condition of a corporation
aggregate, situated like the demandants, vested with corporate
powers for the better executing of a public trust, is altogether
different.    Looking at the matter practically, as the legislature
may be presumed to have done, many, perhaps most of the
overseers, will be re-chosen, and the board will change gradual-
ly.    But suppose an entire new board comes in, the records,
votes, and muniments of title are all in the hands of their
clerk ; the money, securities and personal property are held by
the treasurer ; confidential officers, the performance of whose
duty is usually secured by oath and bond.    They are in as
good a condition to execute the trusts reposed in them, in re-
gard to these charitable funds, as to understand and perform
the other duties confided to them.    They are in the same con-
dition with all other city and town officers, and indeed all offi-
cers of the State government, and of all corporations, where
they come in by annual election.    In most cases of aggregate
corporations, the trustees, directors, managers and executive
officers, all those who are charged with the duty of investigat-
ing and maintaining the rights of such corporations, either to
real or personal property, come into office by annual election,

**and** yet they have but thirty years, within which to commence writs of right.

On the whole, the Court are all of opinion, that the demandants were constituted an aggregate corporation, with perpetual and continued succession ; that a grant to them of real estate, would have carried a fee without being to their successors ; that in a writ of right, they can count only upon their own seisin, within thirty years next before the commencement of the action ; and that, not having so counted in the present case, the demurrer is well taken.